# In the United States Court of Federal Claims

No. 12-488C

(April 18, 2014)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                     *
THE MEYER GROUP, LTD.,               *
                                     *    Exclusive Real Estate Brokerage
           Plaintiff,                *    Agreement; Leave to File Amended
                                     *    Answer and Counterclaim; Rule 15(a);
       v.                            *    Breach of Fiduciary Duty; Lack of
                                     *    Temporal Limit in Extension Clause;
THE UNITED STATES,                   *    Forfeiture; Undue Delay; Prejudice;
                                     *    Futility.
           Defendant.                *
                                     *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Michael K. Ross and Thomas E. Shakow, Aegis Law Group, LLP, 801 Pennsylvania Avenue, N.W., Suite 740, Washington, D.C., 20004, for Plaintiff.

Stuart F. Delery, Bryant G. Snee, Donald E. Kinner, and Douglas T. Hoffman, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., 20044, for Defendant.

---

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT COUNTERCLAIMS**

---

**WILLIAMS**, Judge.

In this contract dispute, Plaintiff, The Meyer Group, Ltd. ("Meyer"), claims that the Postal Regulatory Commission ("PRC") breached an exclusive real estate brokerage agreement executed in 2004. Under this contract, Meyer agreed to assist PRC in obtaining office space in the Washington, D.C. area, and PRC agreed to condition its acceptance of any resulting lease upon the lessor providing Plaintiff a commission. Plaintiff contends that, under the brokerage agreement, it was the procuring cause of any prospective locations it "submitted" during the term of the agreement. Plaintiff claims that PRC breached this agreement by failing to recognize Plaintiff as the procuring cause of certain rental locations and by refusing to aid Plaintiff in obtaining commissions from these transactions.

Plaintiff seeks $402,185.76 in damages for procuring a January 2012 amendment to a April 2005 lease on 901 New York Avenue, N.W., and damages, in an amount to be determined,

for PRC's failure to recognize Plaintiff as the procuring cause of a May 2011 sublease for office space on the fifth floor of 901 New York Avenue, an August 2011 amendment to the May 2011 sublease for additional space on the fourth floor of that same building, and a July 2012 amendment of the fifth floor sublease.

Presently before the Court is Defendant's motion for leave to file an amended answer with two counterclaims alleging breach of fiduciary duty.  Plaintiff opposes the motion on grounds of undue delay, prejudice, and futility.  Because the proposed counterclaims would not withstand a motion to dismiss, the Court **DENIES** Defendant's motion.

## Background

### The Exclusive Real Estate Brokerage Agreement Between Meyer and PRC

On May 5, 2004, PRC's Chairman signed an exclusive real estate brokerage agreement with Meyer.  The agreement set forth the obligations of the parties as follows:

> [Meyer] is hereby appointed, through its representatives, William J. Meyer and James M. Rayborn, as our exclusive real estate broker and will be given the exclusive right to assist us in obtaining a lease or purchasing premises in the Washington, D.C. metropolitan area.  The appointment of [Meyer] is effective for a period of twelve (12) months from the date that you countersign this letter, and will continue on a calendar month-to-month basis thereafter unless [Meyer] receives written notice to the contrary.  [PRC], on ten (10) days written notice to [Meyer], may terminate this agreement for non-performance at any time.
>
> [Meyer] will use its best efforts to secure a location or locations satisfactory to us.  We will cooperate with you in good faith in your efforts to secure satisfactory premises and to maintain this relationship. . . .  All negotiations will be conducted solely by [Meyer] and under its direction, subject to our final approval.  [Meyer] will have no authority to sign a lease, or make any financial commitments, on our behalf.
>
> [Meyer] will acquire information on all locations that meet our requirements. [Meyer] will carefully select and present us those locations, which are the most suitable for our purposes.  If and when we decide on a location, [Meyer] will negotiate the terms of the lease taking advantage of its knowledge of [the] real estate market and the terms of leases previously negotiated by [Meyer].
>
> We recognize that the landlord generally assumes responsibility for the commission of [Meyer] and of any other licensed real estate broker whose cooperation is solicited.  We will therefore cooperate and work with [Meyer] in its efforts to obtain its commission.  In that regard, we shall inform the landlord of [Meyer]'s representation of us before entering into any lease agreement.  We shall also recognize and confirm [Meyer] as the procuring cause of and in the said transaction.  We shall further require, as a condition of entering into a lease

> agreement, that the landlord undertake an obligation to pay a commission (in accordance with typical market rates) to [Meyer], which obligation shall be set forth in the lease agreement or in a written side agreement.

Am. Compl. Ex. A.  In addition, the brokerage agreement contained the following extension clause:

> Subsequent to the expiration or termination of this agreement, we will continue to recognize [Meyer] as our exclusive broker and the procuring cause in accordance with the provisions hereof, with respect to any prospective locations that have been submitted by [Meyer] during the term of this agreement.  In addition, [Meyer] will have thirty (30) days after expiration or termination of this agreement to provide to us a list of those prospective locations submitted to us during the term of this agreement.

Id.

Subsequently, Meyer represented PRC in negotiations for a lease at 901 New York Avenue, and this lease was executed on April 7, 2005.  Am. Compl. ¶ 9.  The term of the lease was 10 years, starting on September 1, 2005.  Pl.'s Proposed Findings of Uncontroverted Fact App. ("Pl.'s App.") 0007.  Each party had the right to terminate the lease early on June 30, 2012.  Id. at 0051.

In January of 2010, PRC's landlord sent Meyer a proposal to extend PRC's lease, and Meyer forwarded this proposal to PRC.  Id. at 0280-83.  On March 29, 2010, Shoshana Grove, PRC's Secretary and Chief Administrative Officer, emailed Meyer, stating that PRC would no longer be working with Meyer.  Pl.'s App. 0131.  On April 6, 2010, Meyer provided PRC with a list of locations that it claimed had been "submitted" to PRC during the term of the brokerage agreement and stated: "PRC is required to continue recognizing [Meyer] as its exclusive broker and the procuring cause in accordance with the [brokerage agreement], with respect to the [listed] locations."  Id. at 0134.  Included on this list was 901 New York Avenue.  Id.

Thereafter, PRC entered into the following four transactions with respect to 901 New York Avenue without designating Meyer as the procuring cause: a sublease with a law firm for 1500 square feet on the fifth floor of the East Tower of the building on May 15, 2011; a first amendment to this lease for temporary space on the fourth floor of the East Tower of the building on August 16, 2011; a seventh amendment to its primary lease on January 13, 2012; and a second amendment to its sublease with the law firm to extend the term of its sublease on July 1, 2012.  Plaintiff claims it is entitled to commissions for these transactions.

**The First Proposed Counterclaim**

In its first proposed counterclaim, Defendant alleges:

> 88.  [Meyer] alleges that it was acting as [PRC's] real estate broker until March 29, 2010 pursuant to the parties' agreement dated May 5, 2004.

89.  Meyer, as PRC's alleged real estate broker, had certain obligations to PRC pursuant to its fiduciary duty, including, but not limited to, a duty of disclosure.

90.  Meyer, as PRC's alleged real estate broker, violated its fiduciary duty to PRC by not disclosing to PRC its view that certain actions undertaken by Meyer were pursuant to the parties' agreement dated May 5, 2004.

91.  Meyer, as PRC's alleged real estate broker, violated its fiduciary duty to PRC by not disclosing to PRC its view that interactions between Meyer and PRC entitled Meyer to act as PRC's real estate broker in future lease negotiations.

92.  Meyer's breach of fiduciary duty has damaged PRC by subjecting it to suit by Meyer on commissions for four lease transactions.

93.  PRC is entitled to forfeiture of any disputed commissions which otherwise would have been earned by Meyer during the period of the breach.

Proposed Am. Answer ¶¶ 88-93.

**The Second Proposed Counterclaim**

In its second proposed counterclaim, Defendant alleges:

96.  Meyer drafted and PRC, at Meyer's behest, signed the agreement dated May 5, 2004.

97.  Meyer, as PRC's alleged real estate broker, had certain obligations to PRC pursuant to its fiduciary duty, including, but not limited to, exercising fidelity and good faith, and not acting adversely to PRC's interests.

98.  Meyer, as PRC's alleged real estate broker, violated its fiduciary duty to PRC by drafting the parties' May 5, 2004 agreement to omit a temporal limit from the extension clause.

99.  Meyer, as PRC's alleged real estate broker, violated its fiduciary duty to PRC by drafting the parties' May 5, 2004 agreement to include an extension clause that only required that Meyer "submit[]" a prospective location.

100. Meyer, as PRC's alleged real estate broker, violated its fiduciary duty to PRC by drafting the parties' May 5, 2004 agreement to include language requiring PRC to advocate on behalf of Meyer receiving a commission.

101. Meyer's breach of fiduciary duty has damaged PRC by subjecting it to suit by Meyer on commissions for four lease transactions.

      102.  PRC is entitled to forfeiture of any disputed commissions which otherwise would have been earned by Meyer during the period of the breach.

Id. ¶¶ 96-102 (first alteration in original).

## Discussion

### Legal Standard for Amendment of Pleadings

Under Rule 15 of the Rules of the United States Court of Federal Claims ("RCFC"), a party may amend its pleading "with the opposing party's written consent or the court's leave." RCFC 15(a)(2). The Court may grant leave at its discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). The Court should freely grant leave absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989) (first alteration in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)) (internal quotation marks omitted).

### Undue Delay

Plaintiff argues that Defendant has unduly delayed seeking leave by asserting its counterclaims 14 months after the case commenced without an adequate explanation for the delay. Pl.'s Resp. 2-3. Defendant counters that it sought leave to amend only six months after Plaintiff filed its amended complaint. Further, Defendant points out that it notified Plaintiff in its summary judgment papers two months after the amended complaint was filed that it would assert breach of fiduciary duty counterclaims if the Court did not grant summary judgment in its favor. Def.'s Reply 2-3.

Delay, without a finding of prejudice, may justify denying a motion to amend "when that delay is measured in years." Cooke v. United States, 79 Fed. Cl. 741, 742 (2007). "[C]ourts have not hesitated to deny motions to amend that have been filed after significant delay." Te-Moak Bands of W. Shoshone Indians v. United States, 948 F.2d 1258, 1262 (Fed. Cir. 1991) (affirming Claims Court's decision to deny leave after an eight-year delay); Christofferson v. United States, 77 Fed. Cl. 361, 366 (2007) (denying leave after a six-year delay). Defendant seeks leave to amend 12 months after filing its original answer, and six months after Plaintiff filed an amended complaint. This delay is insufficient by itself to warrant denial of leave to amend. See Tommaseo v. United States, 80 Fed. Cl. 366, 373 (2008) (finding that a two-year delay in filing amended complaint was not excessive); Cooke, 79 Fed. Cl. at 742-43 (granting leave to amend after a nine-month delay in seeking leave).

### Undue Prejudice

Plaintiff claims it would suffer substantial prejudice if leave is granted because Defendant is asserting a new theory of liability after the Court denied the parties' summary judgment

motions.[1]  A court may find undue prejudice where amending a pleading would result in unfair surprise, unreasonably expand the issues or necessitate the need for additional discovery.  Cooke, 79 Fed. Cl. at 742-43.  Undue prejudice exists when amendment would prevent the non-movant from adequately responding to the new claims.  In re Vitamins Antitrust Litigation, 217 F.R.D. 30, 32 (D.D.C. 2003).

While Defendant did not seek a formal amendment earlier in the litigation process, it did provide notice of the potential counterclaims in its cross-motion for summary judgment and response to Plaintiff's motion for summary judgment two months after Plaintiff filed its amended complaint.  Further, permitting the assertion of breach of fiduciary duty counterclaims would not unduly broaden the issues in contention, given that the alleged breaches of fiduciary duty stem from Plaintiff's conduct in drafting and performing the contract at issue.  Finally, Plaintiff has not argued that granting the amendment would necessitate additional discovery.[2]  Nor has either party requested an extension of the trial date in the event the Court were to grant Defendant's motion for leave to amend.

**Futility**

Plaintiff contends that Defendant's breach of fiduciary duty counterclaims are futile.  An amendment is futile where it "would not withstand a motion to dismiss."  Shoshone Indian Tribe of the Wind River Reservation v. United States, 71 Fed. Cl. 172, 176 (2006).  The party seeking leave "must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion."  Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1354-55 (Fed. Cir. 2006); see also Dotcom Assocs. I, LLC v. United States, 112 Fed. Cl. 594, 598-99 (2013).

A counterclaim must contain facts sufficient to "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6).  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To determine whether a plaintiff has stated a plausible claim for relief, a court must engage in a context-specific analysis and "draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678 (citing Twombly, 550 U.S. at 556).

"To state a claim for breach of fiduciary duty, a plaintiff must allege facts sufficient to establish the following: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that

---

[1] The Court orally denied the parties' cross-motions for summary judgment.  Oral Arg. Tr. 54-55, Sept. 24, 2013.

[2] Plaintiff suggests that knowledge of the counterclaims would have benefited Plaintiff during prior discovery but has not requested additional discovery should the Court grant leave to amend.

duty; and (3) to the extent plaintiff seeks compensatory damages—the breach proximately caused an injury." Paul v. Judicial Watch, Inc., 543 F. Supp. 2d 1, 5-6 (D.D.C. 2008); see also Jenkins v. Strauss, 931 A.2d 1026, 1032-33 (D.C. 2007). Whether a party owed and breached its fiduciary duty involves questions of fact. Grund v. Del. Charter Guarantee & Trust Co., 788 F. Supp. 2d 226, 249 (S.D.N.Y. 2011).

Here, Defendant pleads meager facts in support of its counterclaims. The first counterclaim is predicated on Meyer's failure to disclose its view of the contract. Specifically, Defendant alleges that Meyer breached its fiduciary duty "by not disclosing to PRC its view that certain actions undertaken by Meyer were pursuant to the parties' agreement" and "its view that interactions between Meyer and PRC entitled Meyer to act as PRC's real estate broker in future lease negotiations." Proposed Am. Answer ¶¶ 90, 91. Defendant does not, however, identify what the "certain actions" or "interactions" were. In essence, Defendant posits that a claim for breach of fiduciary duty lies for an agent's failure to regularly reiterate that its actions were governed by, and being taken in furtherance of, the contract that both parties executed.

Defendant's claim that Meyer should have told PRC that Meyer was acting as PRC's exclusive real estate broker in taking certain unspecified actions does not give rise to a plausible claim for breach of fiduciary duty. Defendant has not articulated any legal authority that imposes on an agent a fiduciary duty to inform its principal that it was acting in accordance with their contract. Nor has Defendant identified a clause in the contract creating such a duty. Requiring a party to advise its contracting partner each time it acts pursuant to their contract would impose a superfluous layer of obligation on contracting parties not required by this agreement. An agent would have no reason to believe such notification was necessary, if not specifically requested by the principal. See Restatement (Third) of Agency § 8.11 (2006) (explaining that an agent has a duty to disclose facts it knows or has reason to know the principal wants). In short, imposing a notice requirement for every action undertaken in furtherance of a contract would be overkill.

Defendant's allegation that Plaintiff breached a fiduciary duty by failing to disclose "its view that interactions between Meyer and PRC entitled Meyer to act as PRC's real estate broker in future lease negotiations" suffers from the same legal deficiencies. Defendant, in the counterclaim, fails to identify any "interactions," let alone describe such interactions with requisite specificity. Nor does Defendant articulate any legal authority or contractual provision that requires disclosure of either party's interpretation of their contract during the course of performance. Defendant's allegation is nothing more than PRC's declaration that Meyer should have advised PRC of how Meyer interpreted their mutually executed brokerage agreement. As such, in its first proposed counterclaim, Defendant has failed to allege "enough factual matter" to suggest a plausible breach of fiduciary duty. See Twombly, 550 U.S. at 556; In re Hydrogen, L.L.C., 431 B.R. 337, 348-49 (Bankr. S.D.N.Y. 2010) (dismissing plaintiff's breach of fiduciary duty claim because "vague and general allegations" about "unspecified transactions" and "unnamed obligations" could not form the factual basis of a breach of fiduciary duty claim).

In its second proposed counterclaim, Defendant alleges that Plaintiff breached its fiduciary duty in drafting the terms of the brokerage agreement. According to Defendant, Plaintiff breached its fiduciary duty by creating a brokerage agreement under which PRC was

required to "advocate on behalf of [Plaintiff] receiving a commission" for all prospective properties "submitted" by Plaintiff to PRC during the course of the brokerage agreement. Defendant also claims that Plaintiff breached its fiduciary duty by drafting an extension clause that made Plaintiff the procuring cause of properties "submitted" to PRC during the term of the contract without any temporal limit on PRC's potential obligations post termination.

A fiduciary duty is imposed in an agency relationship because the principal places its trust and confidence in the agent to perform his or her duties in the principal's interests. Siegel ex rel. Latham v. J & H Marsh & McLennon, Inc., 159 F. Supp. 2d 1118, 1128-29 (N.D. Ill. 2001) (describing how a fiduciary relationship is formed when a party places its confidences in the honesty and loyalty of another); see also Restatement (Third) of Agency § 8.01 (explaining that the fiduciary duty requires the agent to serve in the interest of the principal). Defendant has alleged no facts to suggest that Plaintiff consented to serve as PRC's agent prior to the signing of the brokerage agreement. The formation of the agency relationship involves a negotiation over contract terms, where the parties seek to protect their own interests before the agent signs up to the role of a fiduciary. Carter Equip. Co. v. John Deere Indus. Equip. Co., 681 F.2d 386, 392 n.14 (5th Cir. 1982); Barlow Burke, Jr., Law of Real Estate Brokers § 10.02 (3rd ed. 2013); see also Deborah A. DeMott, Breach of Fiduciary Duty: On Justifiable Expectations of Loyalty and Their Consequences, 48 Ariz. L. Rev. 925, 950 (2006). Agents, therefore, generally do not owe a fiduciary duty to their principals in constructing the terms of the agent's employment and compensation. Restatement (Second) of Agency § 390 cmt. e (1958); see also Action Real Estate Corp. v. Bulechek, 309 N.W.2d 502, 504 (Iowa 1981) (finding that no fiduciary duty exists under Iowa law requiring that a real estate agent explain the terms of a real estate brokerage agreement).

A fiduciary duty may arise in the negotiation of the agency contract where the circumstances show that the "creation of the relationship involves peculiar trust and confidence, with reliance by the principal upon fair dealing by the agent" in drafting the agreement. Restatement (Second) of Agency § 390 cmt. e; see also Restatement (Third) of Agency § 8.11 cmt. c. The Second Restatement provides the following illustration of this type of fiduciary duty:

> P, an ignorant person, visits A, an attorney, asking for advice concerning the prosecution of a claim. A honestly advises P to bring suit but obtains from P a promise to pay A an exorbitant sum in compensation, representing tacitly that it is the usual fee for such services. The transaction between A and P is rescindable if A has taken advantage of his position as the adviser of P to obtain an unduly large compensation.

Restatement (Second) of Agency § 390 cmt. e, Illustration 6. So too, the Supreme Court of Illinois upheld a trial court's finding that an agent owed a fiduciary duty to disclose the meaning of its fee agreement where an investment firm trading in commodity options represented that, unlike other firms, it was not charging exorbitant commissions when, in fact, the firm concealed the true extent of its profit by disguising a portion of its compensation as an ambiguous "foreign service fee." Martin v. Heinold Commodities, Inc., 643 N.E.2d 734, 738-41 (Ill. 1994).

Defendant has not alleged any facts or legal authority showing that Plaintiff owed Defendant a fiduciary duty in creating the brokerage agreement at issue. The Restatement only suggests finding a pre-agency fiduciary duty where the principal places "peculiar trust and confidence" in the agent during the negotiation of the brokerage agreement, and this fiduciary duty is imposed to protect vulnerable and unknowledgeable parties from an agent's potential attempt to strike an unfair bargain. As an independent establishment of the executive branch of the United States Government, PRC, a sophisticated party, should expect that a potential broker negotiating the terms of its contract is seeking to protect its own interests -- interests that may not align with the best interests of the Government. A government agency should negotiate a brokerage agreement, like any other contract, at arm's length. See DeMott, supra, at 950 (explaining that, in commercial settings, future principals and agents are assumed to negotiate the terms of their agreements at arm's length).

Defendant has failed to allege any facts demonstrating that a relationship involving "peculiar trust and confidence" existed between Meyer and PRC when the brokerage agreement was drafted. Rather, Defendant presumes that Meyer's inclusion of an indefinite extension clause and requirement that PRC advocate for Meyer's commission, violated Meyer's fiduciary duty. However, the requirements that PRC advocate on behalf of Meyer obtaining a commission and recognize Meyer as the procuring cause of "submitted" locations, as well as the lack of a temporal limitation in the extension clause, were overt and subject to negotiation or rejection. PRC's Chairman signed the contract, thereby agreeing to adhere to the terms of the contract. If PRC did not want to advocate for Meyer to obtain a commission, did not want to recognize Meyer as the procuring cause of "submitted" locations, or desired a temporal limit in the extension clause, it could have attempted to negotiate such changes to the agreement. No facts are alleged suggesting that Plaintiff took advantage of any vulnerability on the part of PRC by including these terms. Nor are there any factual allegations suggesting that Meyer misled PRC about the meaning of the terms. Defendant has cited no case establishing the proposition that the mere inclusion of clauses in a contract by the drafting party can give rise to a breach of fiduciary duty. In any event, the issue of whether these terms are enforceable to the extent Plaintiff claims is squarely disputed by the parties and is the essence of the breach of contract claim pending before the Court.

In sum, because Defendant has pled insufficient facts to demonstrate that Plaintiff owed Defendant a fiduciary duty in creating and negotiating the brokerage agreement, the second counterclaim would be subject to dismissal for failure to state a claim upon which relief can be granted. See Twombly, 550 U.S. at 555-56.

## Conclusion

The Court **DENIES** Defendant's motion for leave to amend its answer to assert counterclaims because the amendment would be futile.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**