# In the United States Court of Federal Claims

No. 12-488C
(Filed: December 19, 2016)

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                    *
THE MEYER GROUP, LTD.,              *
                                    *
            Plaintiff,              *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

Equal Access to Justice Act;
28 U.S.C. § 2412; Substantial
Justification; Special
Circumstances That Would
Make EAJA Fee Award Unjust;
Issue of First Impression;
Breach of Real Estate
Brokerage Agreement.

_____

## OPINION AND ORDER

_____

Thomas E. Shakow, Aegis Law Group, LLP, 801 Pennsylvania Avenue, N.W., Suite 740, Washington, D.C., 20004, for Plaintiff.

Benjamin C. Mizer, Robert E. Kirschman, Jr., Martin F. Hockey, Jr., and Douglas T. Hoffman, United States Department of Justice, Civil Division, Commercial Litigation Branch, PO Box 480, Ben Franklin Station, Washington, D.C., 20044, for Defendant.

**WILLIAMS**, Judge.

This matter comes before the Court on Plaintiff's application for $248,800.24 in attorney fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2012).[1] In the underlying action, Plaintiff, The Meyer Group, Ltd. ("Meyer Group"), prevailed in this Court and on appeal in establishing that the Postal Regulatory Commission ("PRC") breached a real estate brokerage agreement by failing to recognize Plaintiff as its exclusive broker and the "procuring cause" of two lease transactions. Meyer Group, Ltd. v. United States, 121 Fed. Cl. 105, 108 (2015), aff'd, 642 F. App'x 994 (Fed. Cir. 2016) (per curiam).

_____

[1]    On November 16, 2016, the Clerk of Court awarded Plaintiff $5,260.51 in costs associated with this action.

Defendant opposes Plaintiff's application on the grounds that the Government's position throughout the dispute was substantially justified and that special circumstances would make an award to Meyer Group unjust.

For the following reasons, Plaintiff's application is denied.

## Background[2]

Plaintiff is a licensed real estate brokerage company that typically represents tenants with its principal place of business in the District of Columbia.  Meyer Group's relationship with PRC began in 2002, when Meyer Group learned that PRC was looking for office space in the Washington, D.C. metropolitan area and began contacting PRC with information about the real estate market.

In October 2003, after Meyer Group provided services to PRC, such as taking PRC employees on building tours, PRC engaged Meyer Group as PRC's broker through an exclusive brokerage Agreement ("Agreement").  Meyer Group drafted the Agreement and sent it to PRC for review and revision.  Over six months later, on May 5, 2004, the then-Chairman of PRC signed the contract without revision.

The Agreement was effective for an initial term of 12 months, and then month to month, subject to termination with 10 days written notice.  By the terms of the Agreement, Meyer Group was entitled to commissions for PRC's purchase or lease of any properties that Meyer Group submitted to PRC for review.  The Agreement also contained what the parties referred to as an "extension clause" related to commissions to be paid to Plaintiff after the Agreement ended. The extension clause stated:

> Subsequent to the expiration or termination of this agreement, we will continue to recognize The Meyer Group, Ltd. as our exclusive broker and the procuring cause in accordance with the provisions hereof, with respect to any prospective locations that have been submitted by The Meyer Group, Ltd. during the term of this agreement.  In addition, The Meyer Group, Ltd. will have thirty (30) days after expiration or termination of this agreement to provide to us a list of those prospective locations submitted to us during the term of this agreement.

Meyer Group, 121 Fed. Cl. at 110.  The extension clause did not contain a limitation governing how long after termination of the Agreement Meyer Group could receive a commission for work done pre-termination.

On April 7, 2005, PRC entered into a 10-year lease for approximately 29,102 square feet of rentable space located at 901 New York Avenue, NW, Washington, D.C.  After the lease was signed, Meyer Group continued to act as PRC's broker by submitting additional market surveys to PRC and by taking PRC employees on tours of spaces PRC might rent after the expiration of its lease.  Meyer Group's two primary contacts at PRC who had worked with Meyer Group since 2003, retired in 2009.  In August 2009, PRC had a change in management, obtaining a new

---

[2]     This background is derived from this Court's opinion in Meyer Group, Ltd. v. United States, 121 Fed. Cl. 105 (2015), transcripts of the trial and the September 24, 2013 oral argument, exhibits to the parties' cross-motions for summary judgment, and trial exhibits.

Chairman and a new Secretary/Chief Administrative Officer.  Id. at 109.  Neither of these new managers was aware of the Agreement designating Meyer Group as PRC's broker.  Id. at 113.

On March 29, 2010, without reference to the Agreement between PRC and Meyer Group, PRC notified Meyer Group via email that PRC would "no longer be using [Meyer Group's] services."  Id. at 116.  The next day, Meyer Group informed PRC that under the Agreement, PRC was obligated to work with Meyer Group on properties that Meyer Group had submitted as potential lease locations.   PRC responded on March 31, 2010, stating that "any and all representation agreements [PRC] may have with Meyer Group" were terminated.  Id.

On April 6, 2010, Meyer Group faxed a list of 30 properties to PRC that in its view had been "submitted" to PRC under the terms of the Agreement.  After termination of the Agreement, over a period of approximately 28 months, PRC entered into four separate leases for which Meyer Group claimed commissions in this action.  The first lease was an amendment to PRC's Original Lease, signed 655 days after termination.  The three other leases involved property that PRC was subleasing, with the first signed 412 days after termination of the Agreement, the second, 505 days after termination, and the third, 825 days after termination of the Agreement.

## Procedural History

On August 6, 2012, Meyer Group filed suit in this Court under the Contract Disputes Act ("CDA") seeking $469,516.35 in damages plus interest for PRC's failure to recognize Meyer Group as the "procuring cause of" the four leases in question.  The Government denied any liability to Meyer Group on the grounds that 1) the Agreement had been fully performed upon PRC's signing of the Original Lease, 2) commissions were limited to 90 days post termination by the D.C. Code because the extension clause in the Agreement did not specify a termination date, 3) the extension clause was ambiguous and under the doctrine of contra proferentem, had to be construed against Meyer Group as the drafter, and 4) the extension clause was subject to a reasonable time limit, if the D.C. Code did not apply.

Prior to trial, both parties filed motions for summary judgment.  Ruling orally, this Court denied both motions, stating that the Agreement was unclear and that expert testimony was required.  Tr. 54-55 (Sept. 24, 2013).  In its final decision, this Court recognized that the question of what constituted a reasonable time limit of an extension clause without an expressed termination date was a matter of first impression.  This Court found that Meyer Group was entitled to commissions on two of the four leases because those leases were executed within a reasonable time after termination of the Agreement, 655 days and 412 days after termination, respectively.  Meyer Group, 121 Fed. Cl. at 108.  This Court stated:

> The Federal Circuit has held that in the absence of an express time provision in a contract, it is common for courts to imply a reasonable time.  See Am. W. Corp. v. United States, 730 F.2d 1486, 1488 (Fed. Cir. 1984) (citing Nager Elec. Co., Inc. v. United States, 177 Ct. Cl. 234, 368 F.2d 847 (1966); Roberts v. United States, 174 Ct. Cl. 940, 357 F.2d 938 (1966); Merritt–Chapman & Scott Corp. v. United States, 174 Ct. Cl. 250, 355 F.2d 622 (1966)).  The parties have not provided any analogous cases defining what a reasonable time limitation in a brokerage agreement's extension clause should be.  This appears to be a case of first impression for this Court.  Based on the unusual facts of the instant case, the Court

finds that this lease extension, signed 655 days after Meyer Group's termination, occurred within a reasonable period of time.

Id. at 130.   The Court denied Meyer Group's claim for commissions on the other two leases because there was no minimal causal relationship between the activities of Meyer Group as PRC's real estate broker for one lease and because the other lease was executed outside a reasonable time from termination of the Agreement: 825 days after termination.  This Court awarded Meyer Group $404,109.51, plus interest.

The Government appealed, and the United States Court of Appeals for the Federal Circuit affirmed this Court's opinion without decision.  Meyer Group, 642 F. App'x 994 (Fed. Cir. 2016).

## Discussion

## Legal Standards

Under EAJA, a prevailing party in a civil action may obtain reasonable attorney fees in actions brought against the United States.  EAJA states:

> (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.  The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

> \*       \*       \*

> (d)(1)(a) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412.

"The purpose of the EAJA is to 'eliminate legal expenses as a barrier to challenges of unreasonable government action.'"  Cmty. Heating & Plumbing Co., Inc. v. Garrett, 2 F.3d 1143, 1144 (Fed. Cir. 1993) (quoting Ellis v. United States, 711 F.2d 1571, 1576 (Fed. Cir. 1983)).  Courts have found that the Government acts unreasonably when it violates its own policy or regulations and the regulation was not ambiguous or complex and did not require exceptional analysis.  Meinhold v. U.S. Dep't. of Defense, 123 F.3d 1275, 1278 (9th Cir. 1997); see Patrick v. Shinseki, 668 F.3d 1325, 1330-31 (Fed. Cir. 2011) ("Where, however, the government interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification."); Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 967 (D.C. Cir. 2004) (holding that the Government's position was not substantially

justified where it was "wholly unsupported by the text of the applicable regulations" (internal quotation marks omitted)). The Government's conduct similarly lacks substantial justification when the Government fails to follow binding precedent. Enerhaul, Inc. v. Nat'l Labor Relations Bd., 710 F.2d 748, 751 (11th Cir. 1983). As recognized in the legislative history of EAJA, "[m]aking these determinations is undoubtedly a case-by-case matter due to the wide disparity of factual contexts and legal issues that make up government disputes." S. Rep. No. 98-586, at 12 (1984).

EAJA grants attorney fees to the prevailing party when the Government's position is not substantially justified so as to discourage the Government from initiating unjustified litigation and to enable citizens to vindicate their rights. Norris v. Sec. & Exch. Comm'n, 695 F.3d 1261, 1264 (Fed. Cir. 2012). The legislative history elaborates:

> [EAJA] is intended to respond to a chronic problem small business owners have had contesting or challenging the unreasonable exercise of Government authority because of the time and expense required to challenge the vast resources of the Federal Government. It is expected this bill will cause agencies to be more deliberative in their regulatory activity.

H.R. Rep. No. 96-1005 pt.1, at 5 (1980).

To be eligible for an EAJA award, a party must be:

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed .
> . . .

28 U.S.C. § 2412(d)(2)(B).

Plaintiff is a qualifying private party under § 2412(d)(2)(B)(ii), because its net worth was not more than $7,000,000 and it did not have 500 employees at the time this action was filed. Defendant does not contest that Plaintiff's application was timely and that Plaintiff was a prevailing party in the underlying action.

## Substantial Justification

In determining whether to award attorney fees under EAJA, the Court looks to whether the Government's position prior to and throughout litigation was "substantially justified," i.e., had a "reasonable basis in both law and fact." Chiu v. United States, 948 F.2d 711, 715 (Fed. Cir. 1991). The Government has the burden of proving that its position was substantially justified. Pierce v. Underwood, 487 U.S. 552, 567 (1988). The Government's position is substantially justified if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." Id. at 565.[3] "EAJA was not intended to be an automatic fee-shifting device

---

[3]     Plaintiff argues that the standard for substantial justification requires that the Government's position be "clearly reasonable." Pl.'s Reply 3. The Federal Circuit in Chiu v. United States, , however, expressly recognized that the proper standard for assessing EAJA fees is "whether the

in cases where the petitioner prevails . . . .   [S]ubstantial justification is [instead] to be decided case-by-case on the basis of the record." Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States, 837 F.2d 465, 467 (Fed. Cir. 1988) (quoting Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1467 (Fed. Cir. 1986) (en banc)).   While the outcome of a case is indicative of whether the Government's position was substantially justified, it is not determinative of that question, as "the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." Pierce, 487 U.S. at 569.

In reviewing an application for EAJA fees, this Court is required to take into account the totality of circumstances in determining whether PRC's position was substantially justified, including the then-existing precedent on a particular issue. Patrick, 668 F.3d at 1332 (citing Smith v. Principi, 343 F.3d 1358, 1362 (Fed. Cir. 2003); Essex Electro Eng'rs, Inc. v. United States, 757 F.2d 247, 253 (Fed. Cir. 1985); Bailey v. United States, 721 F.2d 357, 360 (Fed. Cir. 1983)).   The Court considers "the clarity of the governing law, that is, whether, at the time of the dispute, 'judicial decisions on the issue left the status of the law unsettled,' . . . and whether the legal issue was novel or difficult." Norris, 695 F.3d at 1265 (quoting Naile v. Comm'r of Internal Revenue., 55 F.3d 189, 192 (5th Cir. 1995)).   Where a novel issue presents a "genuine dispute" in which "reasonable people could differ" regarding the appropriateness of the Government's actions, courts tend to find the Government's position to be justified. See DGR Assocs., Inc. v. United States, 690 F.3d 1335, 1341 (Fed. Cir. 2012) (quoting Pierce, 487 U.S. at 565-66); Ellis, 711 F.2d at 1577 (affirming a denial of EAJA fees where the Government made a "facially respectable argument" on a novel issue (internal citation and quotation marks omitted)); Ulysses Inc. v. United States, 117 Fed. Cl. 772, 778 (2014).

This case involved novel circumstances and legal arguments.   As this Court noted at the outset of its opinion:

> This is a highly unusual case.   A Government agency entered into an exclusive real estate brokerage agreement without negotiating the Agreement or changing one word of the broker's proposed contractual language.   As a result, the Agreement at issue contains language quite favorable to Meyer Group.   Nonetheless, as the parties acknowledge, the Agreement is a binding contract.

Meyer Group, 121 Fed Cl. at 123.   The Government's conduct which gave rise to this controversy - - signing the Agreement without negotiating any of the self-serving terms its counterparty proposed - - was only its initial problem.   Subsequently, the Agreement was apparently lost after a change in management at the agency, and the new leadership was not even aware of the agency's existing Agreement with Meyer Group. Id. at 113.   As the Court concluded, "the fact that miscommunications and disorganized records prevented PRC's new leadership . . . from learning about the Agreement does not negate its existence or relegate its terms to a 'fabrication.'" Id. at 125.

---

government's overall position has a reasonable basis in both law and fact." 948 F.2d 711, 715 (Fed. Cir. 1991) (footnote omitted) (relying on Pierce v. Underwood, 487 U.S. 552, 565 (1988)). As such, this Court declines to apply the heightened "clearly reasonable" standard argued by Plaintiff.

As Defendant correctly posits, "a plaintiff is not entitled to EAJA fees when the issue before the Court is a novel one." Def.'s Resp. 8 (relying on Norris, 695 F.3d at 1265 ("[I]n assessing the justification of the government's position, courts consider the clarity of the governing law, that is whether judicial decisions on the issue left the status of the law unsettled, and whether the legal issue was novel or difficult." (internal citation and quotation marks omitted)). As this Court found, the indefinite temporal language of the extension clause presented an issue of first impression:

> The Federal Circuit has held that in the absence of an express time provision in a contract, it is common for courts to imply a reasonable time. The parties have not provided any analogous cases defining what a reasonable time limitation in a brokerage agreement's extension clause should be. This appears to be a case of first impression for this Court.

Meyer Group, 121 Fed. Cl. at 130 (internal citations omitted).

To resolve this matter, this Court had to interpret this unusual Agreement to determine which properties Meyer Group "submitted" to PRC and impose a reasonable temporal limit for the extension clause. As the Court stated:

> [t]he Agreement provided no time limit on how long the broker would be entitled to a commission for properties he had submitted before the Agreement was terminated. In other words, theoretically, Meyer Group could be entitled to a commission no matter when a lease was eventually executed even if it were years after a property was submitted. The law does not favor such indefinite contract provisions, and as precedent dictates and the experts here agree, the Court is forced to impose a "reasonable" term.

Id. at 128. There was no precedent to inform PRC prior to litigation, or the Court during litigation, on the length of a reasonable term limit to apply where the extension clause in a brokerage agreement was silent on how long post-termination commissions could be received. Meyer Group had taken the extraordinary and untenable position that no temporal limit whatsoever should be imposed. Meyer Group's position that it was entitled to commissions no matter how long after termination a lease was secured, would have applied to the additional 26 properties included on Meyer Group's list, as well as the four properties at issue here.

Given Meyer Group's overly aggressive interpretation of the extension clause and the lack of legal precedent, PRC acted reasonably and justifiably in refusing to pay Meyer Group commissions for lease transactions executed over a year after the Agreement was terminated. Indeed, the Court agreed with Defendant that Plaintiff was not entitled to a commission on the third Brian Cave sublease - - executed 825 days after the Agreement was terminated. Id. at 130. Because the Court's decision hinged on resolution of an issue of first impression, the Government had a reasonable legal and factual basis for its positions throughout this dispute.

The fact that the Court denied Plaintiff's motion for summary judgment further supports a finding that Defendant's position was substantially justified. See United States v. Pecore, 664 F.3d 1125, 1135 (7th Cir. 2011) ("'[T]here is a [rebuttable] presumption that a government case strong enough to survive both a motion to dismiss and a motion for summary judgment is substantially justified.'" (alteration in original and footnote omitted) (quoting United States v. Thouvenot, Wade

& Moerschen, Inc., 596 F.3d 378, 382 (7th Cir. 2010)); see also Pierce, 487 U.S. at 568 (recognizing that "the stage in the proceedings at which the merits were decided" provides an "objective indici[um]" of whether the Government's position is substantially justified); H.R. Rep. No. 96-1105 pt.1, at 10 (1980).

The threat of a deleterious precedent also justified the Government's litigation stance here. At issue was the reach of a disadvantageous contract that harmed the Government itself.  The Government was forced to litigate this action to rein in the potential adverse effects of that deal. Plaintiff persisted in pushing that contract to its limits and beyond to such a degree that the Government was clearly justified in defending the suit to avoid even more extensive losses and harmful precedent.   As the Government's expert testified, "a month-to-month exclusive commercial real estate brokerage agreement that 'goes on forever' would be an abusive agreement . . . ."  Meyer Group, 121 Fed. Cl. at 121 (internal citation omitted).  Meyer Group's expert "acknowledged that the Agreement was the only agreement he had seen over the course of his 29-year career that paired very broad 'submitted' language with no temporal limitation governing how long after termination a commission could be received for work done pre-termination."  Id. at 120 (internal citation omitted).

Meyer Group pressed its interpretation that commissions on submitted properties had to be paid indefinitely on appeal even though Meyer Group's principal had voiced a contrary interpretation at trial.  Tr. 120 (May 7, 2014) ("I think June of 2012 is kind of the magic - - from a practicality standpoint, I think June of 2012 is probably the date that everything had to be settled by.  My comment about 2022 was just an example that that's a whole nother event, whole nother lease series that I would have no claim to, but negotiations and efforts up until 2012 of June, I would be entitled, because that's the date the world stops spinning.").  As Defendant argued:

> Despite this explicit testimony by Mr. Meyer before the factfinder – this Court – that would decide the reasonable term to apply if the Government's legal position was adopted, Meyer went right back to advocating that its indefinite agreement is not subject to any temporal limit.  Oral Argument at 16:05-17:05, Meyer Grp., Ltd. v. United States, 2016 WL 1042944 (Fed. Cir. Mar. 16, 2016) (No. 2015-5117) (Court: "So you're saying this is unlimited?", Counsel: "Yes."); id. at 18:35-24:20 (Counsel: Correct, there is no temporal limitations.") (Counsel: "Accepting the premise of the hypothetical [of a tenant moving to a building 10 years after submission], the answer would be 'Yes'"); (Counsel: As the extension clause is written . . . any rental of any property submitted by my client during the term of the agreement would be subject to his right to a commission.").  Such position by Meyer on appeal makes absolutely clear that Meyer – if it could have secured its desired holding on appeal – intended to maintain a right to follow-on commissions at 901 New York Avenue, and presumably any of the other 29 buildings on the Meyer Group's protected list (because they are subject to the exact same agreement) despite Mr. Meyer's plain testimony to the contrary at trial.

Def.'s Resp. 21.  Only through litigation was the Government able to establish precedent for the proposition that indefinite extension clauses in real estate brokerage agreements are subject to reasonable temporal limits.  Meyer Group, 121 Fed. Cl. at 130, aff'd, 642 F. App'x. 994.

Meyer Group asks this Court to find that the Government's position lacked substantial justification due to one position the Government espoused.  Specifically, Meyer Group places

undue emphasis on the agency's position that the Agreement only governed a single lease and commission and terminated upon the signing of the Original Lease. Meyer Group claims that this position was so pervasive it tainted any later substantially justified positions that the Government may have taken before this Court and on appeal. Although this Court did characterize that single argument as "strained," Defendant's isolated argument did not color its entire pre-litigation or litigation positions. Meyer Group's seizing upon a single Government argument to attack the reasonableness of the Government's overall position contravenes governing precedent. In Commissioner, I.N.S. v. Jean, the Supreme Court made clear that while "the parties' postures on individual matters may be more or less justified, the EAJA . . . favors treating a case as an inclusive whole, rather than as atomized line-items." 496 U.S. 154, 161–62 (1990); see also Sabo v. United States, 127 Fed. Cl. 606, 632 (2016) ("[T]he court must determine whether, in light of the entirety of the government's conduct, the position of the United States was substantially justified." (internal citation and quotation marks omitted)).

Moreover, although this Court rejected PRC's interpretation that the extension clause terminated upon the signing of the Original Lease, that interpretation, while unsuccessful, was reasonable advocacy to limit the Government's exposure under the Agreement Meyer Group had drafted. Indeed, this Court recognized that various portions of "the Agreement refer[red] to 'transaction,' 'lease,' etc. several times in the singular." Meyer Group, 121 Fed Cl. at 124. The Court found that, as Defendant had argued, the first sentence of the Agreement could be reasonably read to refer to a single transaction, as it stated that Meyer Group would be given "the exclusive right to assist [PRC] in obtaining a lease or purchasing premises in the Washington D.C. metropolitan area." Id. at 109-10 (emphasis added). While the Government did not prevail in all its positions, it did prevail in setting a temporal limit to Meyer Group's indefinite extension clause and in defeating Plaintiff's claim for a commission on one of the submitted properties at issue.

In sum, the Government's position was substantially justified in view of the totality of arguments the Government voiced, the unusual terms of the Agreement, the fact that PRC did not negotiate the Agreement, the aggressive interpretation by Plaintiff, the lack of precedent, and the Court's rejection of Meyer Group's motion for summary judgment. As this Court finds that the Government's factual and legal positions throughout the dispute were substantially justified, Plaintiff is not entitled to EAJA fees.

## Special Circumstances Would Make an Award Unjust

"The purpose of the EAJA is 'to eliminate legal expenses as a barrier to challenges of unreasonable government action.'" Cmty. Heating & Plumbing, 2 F.3d at 1145 (quoting Ellis, 711 F.2d at 1576). EAJA's focus "is on those individuals for whom cost may be a deterrent to vindicating their rights" and "rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy." S. Rep. No. 96-253, at 5-6 (1979). As such, EAJA

> recognizes that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits of Federal authority. Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their rights.

Id. at 6.

This case bears no resemblance to the type of litigation EAJA was intended to facilitate. This dispute about real estate commissions does not involve the Government's formulation of public policy, and Meyer Group is not vindicating rights that serve any public purpose. Rather, this dispute resulted from unfortunate Government missteps in entering a disadvantageous contract and from Plaintiff's aggressive interpretation of that contract - - not from Governmental conduct implicating a public purpose. Unlike the public interest litigants EAJA was designed to assist, Meyer Group was not a victim of the Government overstepping its authority or imposing unreasonable regulations. The Government was not violating a statute or acting arbitrarily in a way that adversely impacted public policy or contravened a public purpose. On the contrary, the Government is the victim here, as Meyer Group has already received a substantial monetary benefit of a bargain it was able to secure without any negotiation by the Government. Additionally, Meyer Group's tack in pressing that contract to an extremely unreasonable limit - - claiming commissions for "submitted" properties in perpetuity - - makes it undeserving of an EAJA award.

EAJA permits the Court to deny fees if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This special circumstances provision "gives the court discretion to deny awards where equitable considerations dictate an award should not be made." S. Rep. 96-253, at 7. Accordingly, this provision acts as a "safety valve" to help "insure that the Government is not deterred from advancing in good faith . . . credible extensions and interpretations of the law . . . ." Id. Here, the Government advanced in good faith its interpretation of an unfortunate contract executed and performed in "highly unusual" circumstances and acted reasonably to defend Plaintiff's overly aggressive litigation position. As such, special circumstances render an EAJA award unjust.

## Conclusion

Meyer Group's application for attorney fees and expenses under EAJA is **DENIED**.[4]

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

[4] This ruling encompasses all fees and expenses Plaintiff claimed including those covering approximately 120 hours of work related to its appeal. Pl.'s Mot. Ex. G. This Court rejects Defendant's argument that an EAJA application for fees and expenses incurred in an unsuccessful appeal can only be made to the appellate court. See Def.'s Resp. 22-23. Defendant has cited no Federal Circuit precedent which would require the appellate court to separately assess a portion of Plaintiff's fee application piecemeal. The issues presented in this Court and on appeal were the same, and Defendant's position did not vary. See SUFI Network Servs., Inc. v. United States, No. 11-804C, 2016 WL 6123569, at *5-6 (Fed. Cl. Oct. 19, 2016); Impresa Constr. Geom. Deominco Garufi v. United States, 100 Fed. Cl. 750, 775 n.35 (2011).